UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAS NOGESS, | ) ) ) |
| Plaintiff, | ) Docket No. 2:19-cv-13147 |
| v. | ) ) |
| | ) District Judge: |
| HOUSING AUTHORITY OF JEFFERSON PARISH, | ) ) ) Magistrate Judge: |
| Defendant. | ) ) ) |

**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND ATTORNEY'S FEES**

JAS NOGESS files this Complaint against the defendant under 42 U.S.C. § 1983 and 28 U.S.C. § 1367 for violation of 42 U.S.C. § 1437d(k) of the United States Housing Act, the Due Process Clause of the 14th Amendment to the United States Constitution, and state law:

**INTRODUCTION**

1. The plaintiff, Jas Nogess, seeks injunctive relief, declaratory relief, and attorney's fees for the defendant unlawful decision to terminate her federal Housing Choice Voucher. The Housing Authority of Jefferson Parish unlawfully denied her the opportunity to review relevant documents in the Housing Authority's possession prior to the administrative hearing on her termination. It also denied Ms. Nogess the opportunity to present evidence for review by the Hearing Officer. The Hearing Officer based his decision on hearsay whose reliability and probative value is insufficient to constitute substantial evidence, in violation of due process. The Housing Authority is relying on his

1

legally erroneous decision, pursuant to a legally insufficient hearing, to terminate Ms. Nogess' federal assistance.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action and the defendant pursuant to 28 U.S.C. §§ 1331 and 1367 because this case arises under the Constitution and laws of the United States as well as a state law claim.

3. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. Rules 57 and 65.

4. The defendant resides in the Eastern District of Louisiana and the principal events giving rise to the claims stated herein occurred in this district. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2), and 1391(c)(2).

## PARTIES

5. The plaintiff Jas Nogess is a low income individual who participates in the federal Housing Choice Voucher (hereinafter "Section 8") program administered by the Housing Authority of Jefferson Parish. At all material times relevant to this suit, Ms. Nogess was a resident of Jefferson Parish, Louisiana.

6. The defendant Housing Authority of Jefferson Parish ("HAJP") is a political subdivision of the State of Louisiana pursuant to La. R.S. § 40:384. HAJP is not a state agency for the purposes of the Louisiana Administrative Procedures Act. La. R.S. § 40:406(B)(1). HAJP is not entitled to the state's sovereign immunity because its funding is not from the state, it enjoys local autonomy, is operated to deal with local housing problems rather than statewide, has the capacity to sue and be sued in its own name, and has the right to hold and use property.

## THE HOUSING CHOICE VOUCHER PROGRAM

7. The federal Housing Choice Voucher Program, more commonly referred to as "Section 8," is funded through the U.S. Department of Housing and Urban Development ("HUD") and is administered by a local Public Housing Authority ("PHA").

8. Unlike traditional public housing, the Section 8 program allows a tenant to rent from a private landlord of her choosing.

9. The purpose of the Section 8 program and other housing assistance programs regulated by HUD is "aiding low-income families in obtaining a decent place to live and … promoting economically mixed housing." 42 U.S.C. §1473f. As such, tenant rent is capped at thirty to forty percent of tenant income to ensure affordability. 42 U.S.C. §1473f(o)(2)(A); §1473f(o)(3). The remainder of the rent is paid by the PHA in the form of a Housing Assistance Payment "HAP" directly to the landlord.

10. Once admitted into the program, a tenant's eligibility can only be terminated for specific reasons set out in the federal regulations at 24 C.F.R. §§ 982.552 and 982.553.

11. 42 U.S.C. § 1437d(k) requires that public housing authorities receiving assistance under the United States Housing Act establish and implement an administrative grievance process through which tenants can address certain proposed adverse actions by the housing authority.

12. As a result, housing authorities must provide notice and a hearing with an impartial hearing officer *before* termination of Section 8 assistance. 42 U.S.C. § 1437d(k); 24 C.F.R. § 982.555 (implementing regulation).

13. In order for the hearing to satisfy the requirement, "[t]he PHA and the family must be given the opportunity to present evidence, and may question any witnesses." 24 C.F.R. § 982.555(e)(5) (implementing regulation).

14. Section 8 tenants have a right to pre-hearing discovery. Specifically, tenants "have an opportunity to examine any documents or records or regulations related to the proposed action." 42 U.S.C. §1437d(k)(3). "The family **must** be given the opportunity to examine before the PHA hearing any PHA documents that are **directly relevant to the hearing**. . . . If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing." 24 C.F.R. § 982.555(e)(2) (emphasis added).

15. The PHA is not bound by a hearing decision if it is contrary to HUD regulations, or requirements or to state, federal, or local law and must promptly notify the family if it determines that it is not bound by the decision. 24 C.F.R. § 982.555(f)(2)-(3).

## STATEMENT OF FACTS

16. Ms. Nogess began her participation in the Section 8 program administered by the Housing Authority of Jefferson Parish ("HAJP") on March 7, 2018.

17. At the time of her intake, HAJP contracted with Louisiana Housing Development Corporation ("LHDC"), to administer the Section 8 program. As set out below, during the events at issue in this case, HAJP replaced the LHDC with another contractor.

18. Ms. Nogess' assigned caseworker with the LHDC was Rilene Lapre.

19. Upon information and belief, Ms. Lapre, and all other HAJP Section 8 program staff at the time of Ms. Nogess's program admission, were actually employees of LHDC, a contractor of HAJP.

20. On March 7, 2018, Ms. Nogess met with a HAJP employee and completed a Personal Declaration for Section 8 Rental Assistance on which she certified that her only income was a $600 per month contribution from her mother.

21. Also on March 7, 2018, Ms. Nogess's mother signed a document certifying that she was temporarily providing her daughter with $600 per month while her daughter worked on "finding a job."

22. Jas Nogess told the employee who conducted her intake interview that she was looking for work. The employee informed her that she would need to submit multiple check stubs in order to process a change in income.

23. On March 8, 2018, the day after she completed her intake, Ms. Nogess was offered a job at Downtown Development District of New Orleans.

24. Ms. Nogess called HAJP to report her new employment. She spoke to a receptionist named Diana.

25. Diana informed her that she would let Ms. Lapre know about her employment, and that she should submit check stubs or an employment offer letter prior to moving into her apartment so that her rent could be calculated based on her current income.

26. Ms. Lapre met with Ms. Nogess on March 24, 2018 and issued her a Section 8 voucher and Request for Tenancy Approval ("RFTA") packet with which to find housing. Ms. Nogess was given until June 22, 2018 to locate housing. She was later granted an extension until July 23, 2018.

27. On or around June, 2018, Ms. Nogess located a house at 4328 Morris Place, Apartment C, Jefferson, LA 70121. The landlord filled out the RFTA and submitted it to HAJP.

28. Shortly thereafter, Ms. Nogess received a call from Rilene Lapre stating that the house she found was too expensive based on her income. Ms. Nogess reminded Ms. Lapre that she was now working. Ms. Lapre instructed her to bring in pay stubs.

29. Ms. Nogess brought her pay stubs to the Section 8 office at 1101 4th St. Unit 203, Gretna, LA 70053. She left them with the receptionist, Diana, to give her caseworker Ms. Lapre. She signed in on the paper sign-in sheet at the window.

30. Upon information and belief the former Section 8 contractor did not issue receipts to participants who dropped off paperwork. Ms. Nogess did not receive a receipt for her pay stubs.

31. On June 27, 2018, Ms. Lapre called Ms. Nogess to inform her that the apartment was approved. This interaction is documented by a handwritten note in Ms. Nogess's file.

32. HAJP signed a Housing Assistance Payment contract with the owner effective July 3, 2018.

33. Upon information and belief, Ms. Nogess' visits to the Section 8 office are documented by paper sign-in sheets.

34. At no time did Ms. Lapre ask Ms. Nogess to complete any paperwork or sign any documents verifying that her income had not changed since her initial intake three months prior.

35. Upon information and belief, it was the policy of HAJP and its contractors to document every interaction in person or over the phone with a program participant via contemporaneous electronic case notes.

36. According to HAJP, Ms. Lapre did not record a single electronic case note during the entire period that Ms. Nogess was on her caseload, despite the fact that they had at least one in-person meeting and multiple documented interactions over the phone.

37. On or around October 2018, HAJP terminated its contract with its former Section 8 administrator, LHDC, and contracted with a new entity to administer its Section 8 program.

38. Upon information and belief, at the time of the contract termination Ms. Lapre's employment was also terminated and she no longer works on behalf of HAJP.

39. On May 25, 2019, Ms. Nogess completed her annual recertification with her new caseworker, Soly Rosario. She certified her employment at Downtown New Orleans Development District. An Earned Income Verification (electronic database verification of wages and other income) confirmed that her employment start date was March 8, 2018.

40. On July 19, 2019, Ms. Rosario issued Ms. Nogess an "Intent to Terminate Notice" stating that her Section 8 assistance would be terminated due to her alleged failure to report her job at Downtown Development District of New Orleans. As a result of her alleged failure to report the income, Ms. Rosario alleged that HAJP had overpaid assistance in the amount of $7,917.00. The letter stated that Ms. Nogess had 10 days in which to request an informal hearing to contest the decision.

41. The letter did not allege fraud.

42. That same day, despite the fact that appeal rights had not run and a hearing had not yet been held, HAJP sent a letter to Ms. Nogess' landlord informing him that HAJP would no longer be assisting Ms. Nogess after August 31, 2019. This caused Ms. Nogess'

landlord to threaten Ms. Nogess with eviction if she stayed in the unit past August 31, 2019.

43. On July 25, 2019 Ms. Nogess submitted an Informal Hearing Request Form, which is the administrative appeal available in the Section 8 program. She also submitted a request in writing for "all video and or phone recording as well as sign in sheets" from the period of time from March 18, 2018 to July 18, 2018.

44. Soon after, Ms. Nogess retained counsel.

45. On August 12, 2019 Southeast Louisiana Legal Services ("SLLS") submitted a Request for File Review.

46. HAJP sent SLLS a pdf of Ms. Nogess' file. HAJP claimed that the pdf represented Ms. Nogess' entire file, but did not provide SLLS with an opportunity for an in-person review.

47. At no point before the hearing was Ms. Nogess or SLLS ever sent the requested sign-in sheets and recordings.

48. Participants have access to no subpoena power for their informal hearings, which are the only administrative hearings to contest agency actions available to them. As such, Ms. Nogess and her attorneys had no way to obtain the requested documents.

49. Upon information and belief the sign-in sheets from March 7, 2018 to July 18, 2018 should document all of Ms. Nogess' visits to the Section 8 office, including the visit where she turned in her pay stubs.

50. An informal hearing was held on August 23, 2019.

51. In the hearing, undersigned counsel raised the issue of the failure of HAJP to provide the requested sign-in sheets.

8

52. In the hearing, HAJP presented as evidence the absence of pay stubs or other written documentation of Ms. Nogess' job in her case file. HAJP also presented the fact that Ms. Lapre only wrote down Ms. Nogess' $600 family contribution, and failed to include her employment income, on paperwork completed in July, 2018 to calculate her rent prior to moving into her new house. HAJP also presented an undated, unsigned, handwritten note allegedly by Ms. Lapre on the RFTA checklist document which states "*NO INCOME CHANGE*".

53. Ms. Lapre, who no longer works on behalf of HAJP, was not present to testify.

54. In the hearing, Ms. Nogess presented her testimony that she had reported income, and Sprint phone records showing multiple contacts with the agency between March and July, 2018. She reiterated her request for sign-in sheets. HAJP agreed to investigate whether those documents from the former administration had been preserved.

55. Following the hearing, but before a decision was issued, undersigned counsel was informed over email that the sign-in sheets from the previous administration had been preserved and were in storage. Counsel requested the sign-in sheets and was told they were "inaccessible."

56. Although no hearing decision had been issued by August 31, 2019, upon information and belief HAJP failed to notify Ms. Nogess' landlord in writing that its previous correspondence stating her assistance was terminated as of that date was rescinded.

57. Fearing eviction, which would result in the loss of her assistance under Section 8 regulations, Ms. Nogess vacated the unit by August 31, 2019 and moved into temporary housing.

58. On September 5, 2019, the Hearing Officer issued a decision upholding the termination. Exhibit A.[1] The Hearing Officer, in his decision, supposedly listed the exhibits presented by each party. However the Officer failed to list any exhibits presented by Ms. Nogess despite the fact that she presented phone records showing contact with the agency during the time period in question.[2] The Hearing Officer does not mention the phone records anywhere in the decision.

59. The Hearing Officer concluded that, "HAJP has met its burden of proof in establishing, by a preponderance of evidence, that the participant violated program rules by failing to report her income from Downtown New Orleans Development [sic]. . . . Based on the evidence offered by the parties in the matter, it is not believed that the income was reported nor captured by the agency in its determination of eligibility."

60. The Hearing Officer also states in its conclusions, "[t]here were no mitigating circumstances identified at the time of the informal hearing," despite the fact the parties identified the change in administration, absence of Ms. Lapre, and lack of requested documentation from the previous administration as mitigating circumstances.

61. The Hearing Officer did not state which evidence he relied on in rendering his decision. Based on subsequent correspondence with HAJP, upon information and belief the Hearing Officer relied on (1) Ms. Lapre's assertions on paperwork she completed to calculate Ms. Nogess' rent and subsidy amount that Ms. Nogess' income as a $600

---

[1] The hearing decision erroneously states that Ms. Nogess had no representative at the hearing, when in fact she was represented by SLLS.
[2] The hearing was held by phone. The Hearing Officer called in to the hearing from out of state, and it is unclear if HAJP actually shared the exhibits presented with the Hearing Officer.

contribution rather than wages, and (2) Ms. Lapre's undated, handwritten notation "*NO INCOME CHANGE*" on the RFTA Checklist in Ms. Nogess' file.

62. Upon information and belief, the Hearing Officer also relied on the fact that Ms. Nogess was unable to produce documents proving she turned in her pay stubs or reported her income.

63. The hearing decision states that Ms. Nogess' program participation will be terminated on October 31, 2019.

64. If HAJP is permitted to terminate Ms. Nogess' Section 8 assistance on October 31, 2018, she will be unable to lease up with a new landlord and will experience immediate harm in the form of economic loss, homelessness, and mental anguish.

## CAUSES OF ACTION

### First Cause of Action

***HAJP violated of 42 U.S.C. § 1437d(k) by denying Ms. Nogess the opportunity to review relevant documents in its possession prior to the hearing, and denying her the opportunity to present evidence to the Hearing Officer.***

65. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

66. 42 U.S.C. § 1437d(k) requires that Public Housing Authority ("PHA") programs provide participants with opportunity for access to documents relevant to their hearing:

> The Secretary shall by regulation require each public housing agency receiving assistance under this Act to establish and implement an administrative grievance procedure under which tenants will—
> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l);
> **(3) have an opportunity to examine any documents or records or regulations related to the proposed action;**
> (4) be entitled to be represented by another person of their choice at any hearing;

11

>    (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
>    (6) be entitled to receive a written decision by the public housing agency on the proposed action.

(emphasis added).

67. HUD's implementing regulations require that an informal hearing occur *prior to* termination of assistance. 24 C.F.R. § 982.555(a)(2).

68. The implementing regulations further require that:

> The family must be given the opportunity to examine **before the PHA hearing any PHA documents that are directly relevant to the hearing.** The family must be allowed to copy any such document at the family's expense. If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.

24 C.F.R. § 982.555(e)(2)(i) (emphasis added).

69. The implementing regulations further require that: "The PHA and the family must be given the **opportunity to present evidence**, and may question any witnesses." 24 C.F.R. § 982.555(e)(5) (emphasis added).

70. HAJP failed to provide PHA documents directly relevant to the hearing to Ms. Nogess and her representative, namely the sign-in sheets from the previous administration. These documents were directly relevant to the hearing because they might affect the Hearing Officer's conclusion that Ms. Nogess failed to report her income.

71. The Hearing Officer erroneously relied on an absence of documents in the client's file showing reported income, when HAJP has admitted that it has, in its possession, sign-in sheets that Ms. Nogess believes could prove that she turned in her pay stubs to the agency.

72. Upon information and belief, HAJP has a policy or custom of (1) denying participants access to relevant records kept by the previous Section 8 administration that

are not included in the client's paper file; and (2) conducting informal hearings with a remote hearing officer who does not have access to all of the evidence presented in the hearing.

73. The defendant' violation of § 1437d(k) and its implementing regulations deprived the plaintiff of rights secured by the laws of the United States under color of State law, which is actionable pursuant to 42 U.S.C. § 1983.

## Second Cause of Action

*HAJP violated the Due Process Clause of the 14th Amendment of the United States Constitution by denying Ms. Nogess the opportunity to review relevant documents in its possession prior to the hearing, denying her the opportunity to present evidence to the Hearing Officer, and failing to provide adequate pre-termination process.*

74. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

75. As set out above, Section 8 eligibility can only be terminated for cause. Ms. Nogess therefore has a property interest in continued receipt of the assistance.

76. To comply with due process, Section 8 participants must be given notice and an opportunity for an informal hearing prior to termination. Hearing Procedures must be tailored to insure that participants are given a meaningful opportunity to present their case.

77. As part of her due process protection, Ms. Nogess is entitled access to any documents that may be relevant to her hearing.

78. Ms. Nogess and her attorney requested potentially exculpatory documents that HAJP has admitted are in its possession. These documents, namely sign-in sheets from the former Section 8 administration, are relevant because, upon information and belief,

13

they would affect the Hearing Officer's determination that Ms. Nogess failed to report her income.

79. HAJP failed to or refused to provide the requested documents.

80. As a result, Ms. Nogess was denied the ability to fully present a defense to the allegations against her.

81. Ms. Nogess was also denied the opportunity to present documents for consideration by the Hearing Officer, as evidenced by the fact that the documents she submitted in advance of the hearing, and at the hearing, are not referenced in the list of exhibits reviewed by the remote Hearing Officer.

82. Because the Hearing Officer relied on hearsay from an absent former employee rather than Ms. Nogess' competent testimony that she did, in fact, report her income, Ms. Nogess was not afforded any meaningful opportunity to contest or question the so-called evidence against her.

83. The Hearing Officer relied on hearsay evidence from Ms. Nogess' former caseworker that does not meet the Fifth Circuit standard for hearsay that is sufficiently reliable to constitute substantial evidence.

84. By failing to provide adequate pre-deprivation process, HAJP deprived Ms. Nogess of her property without due process of law, in contravention of the 14th Amendment. This deprivation caused and will continue to cause serious financial injury to Ms. Nogess in the amount of her terminated rental assistance payments and mental anguish caused by imminent homelessness.

85. The defendant' violation of the due process clause deprived the plaintiff occurred under color of State law, and is actionable pursuant to 42 U.S.C. § 1983.

**Third Cause of Action**

*Under state law, HAJP's hearing decision is arbitrary and capricious and is not based on substantial evidence, because it was reached through improper procedures and because it was solely based on hearsay evidence that has no inherent reliability or probative value.*

86. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

87. As set out above, the Hearing Officer's decision was reached through improper procedures that deprived Ms. Nogess of the chance to present her case and, on information and belief, prevented the Hearing Officer from considering all the evidence presented.

88. Considering Ms. Lapre's lack of recordkeeping and subsequent termination, the fact that Ms. Nogess' testimony directly contradicts the hearsay from Ms. Lapre, and the fact that Ms. Nogess had no subpoena power in the administrative hearing, the hearsay evidence from Ms. Nogess' file (an undated, handwritten annotation of "no income change," forms showing that income was calculated without wages, and the absence of *any* entries regarding contacts with Ms. Nogess), is not sufficiently reliable to meet the standard of substantial evidence.

89. The Hearing Officer's decision to terminate assistance based on this evidence was arbitrary and capricious and not based on substantial evidence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the defendant as follows:

A. Allow her to proceed *in forma pauperis* in this matter;

15

B. Recognize its jurisdiction over the action;

C. Issue a temporary restraining order and preliminary injunction enjoining and restraining the defendant and its agents, employees, representatives, or any other person acting directly or indirectly with them, from terminating Ms. Nogess' Section 8 benefits, and ordering them to maintain her section 8 benefits, until further order from this Court;

D. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, finding that Ms. Nogess' hearing violated due process and statutory requirements, and that the hearing decision was arbitrary and capricious and not based on substantial evidence;

E. Order that the hearing decision be reversed or, in the alternative, the matter be set by defendant for re-hearing that complies with federal law;

F. Enter a permanent injunction restraining defendant from terminating Ms. Nogess' Section 8 assistance until she is provided with a legally sufficient hearing;

G. Award Plaintiff on prevailing, reasonable attorney's fees under 42 U.S.C. § 1988;

H. Assign all costs in this matter to the defendant; *see* 28 U.S.C. § 1920, and

I. Grant such other remedial and equitable relief as may be just and proper.

Respectfully submitted,

SOUTHEAST LOUISIANA LEGAL SERVICES

By:_/s/ Hannah Adams_____
Hannah Adams, Esq., LSBA # 36343
1340 Poydras St. Suite 600

New Orleans, Louisiana 70112
Telephone: (504) 529-1000 x 258
hadams@slls.org

David H. Williams, LSBA # 17867
1340 Poydras St. Suite 600
New Orleans, Louisiana 70112
Telephone: (504) 529-1063
dwailliams@slls.org

*Attorneys for Jas Nogess*