| | |
|---|---|
| JAS NOGESS | CIVIL ACTION |
| VERSUS | No. 19-13147 |
| HOUSING AUTHORITY OF JEFFERSON PARISH | SECTION I |

## ORDER & REASONS

Before the Court is plaintiff Jas Nogess's ("Nogess") motion[1] for a temporary restraining order and preliminary injunction to enjoin the termination of Nogess's Section 8 benefits by the Housing Authority of Jefferson Parish ("HAJP"). For the following reasons, the request for a temporary restraining order is denied. A hearing on a preliminary injunction shall be scheduled at a later date.

### I.

The Section 8 Housing Choice Voucher Program ("Section 8") provides federal housing assistance to help low-income individuals obtain and maintain a decent place to live. *See* 42 U.S.C. § 1437f(a). Public housing agencies determine whether individuals are eligible to participate in the program and provide housing vouchers to approved individuals for subsidized rental assistance payments.[2] *See* 24 C.F.R. §§ 982.201 & 982.302; 42 U.S.C. § 1437f. All recipients of Section 8 housing vouchers are responsible for contributing 30% of their family's monthly adjusted income or 10% of their family's gross monthly income, whichever is greater, towards their monthly

---

[1] R. Doc. No. 3.
[2] The Court will refer to Section 8 participants as "tenants."

1

rent. 42 U.S.C. § 1437f(o)(2). If the monthly rent of their unit exceeds the established "payment standard," tenants must also pay the amount by which their rent exceeds that payment standard.[3] 42 U.S.C. § 1437f(o)(2)(B). In either situation, the Section 8 housing subsidy covers the remaining balance of the rent.

Tenants are required to provide information requested by a public housing agency or the United States Department of Housing and Urban Development ("HUD") that is necessary for the administration of the program. 24 C.F.R. § 982.551(b)(1). This information includes the tenant's income, employment, and household composition.[4] All such information must be "true and complete," 24 C.F.R. § 982.551(b)(4), and any relevant changes must be promptly reported by the tenant.[5] If a tenant does not comply with program requirements, either through "action or failure to act," her Section 8 housing assistance may be terminated. 24 C.F.R. §§ 982.552(a)(1) & 982.552(c)(1).

Nogess is a participant in the Section 8 program administered by HAJP. Her Section 8 participation began on March 7, 2018 when she completed a Personal Declaration for Section 8 Rental Assistance, certifying that her total income was $600 per month in family contributions from her mother.[6] Nogess's current benefits are set to be terminated on October 31, 2019 for her failure to comply with her tenant

---

[3] A tenant's Section 8 housing subsidy is based on a local "payment standard" that "reflects the cost to lease a unit in the local housing market." 24 C.F.R. § 982.1(a)(3). The payment standard is established pursuant to 42 U.S.C. § 1437f(o)(1)(B).
[4] R. Doc. No. 12-8, at 12.
[5] *Id.*
[6] R. Doc. No. 3-1, at 2 ¶¶ 7–8.

obligations. Pursuant to federal regulations, Nogess's termination from the Section 8 program will occur on January 28, 2020 if HAJP does not provide continued rental assistance.[7]

At the time of her intake on March 7, 2018, Nogess was seeking employment.[8] During her intake interview, HAJP informed Nogess that she was to promptly report any new employment and submit paycheck stubs to verify and process a change in income.[9] The next day, March 8, 2018, Nogess was hired by the Downtown Development District of New Orleans.[10] On that same day, Nogess completed and signed an Employment Verification Request with HAJP, but she did not provide any information with respect to the name or contact information of her employer.[11]

Pursuant to Section 8 regulations and HAJP policy, tenants must report any changes in income and provide relevant documentation to HAJP within ten days of such change.[12] *See* 24 C.F.R. § 982.55(b); 42 U.S.C. § 1427f(o)(5). According to Nogess, she called the HAJP office to inform them of her new job and was again told that she needed to submit paycheck stubs in order to calculate her Section 8 rental subsidy.[13]

---

[7] *See* R. Doc. No. 24.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 2 ¶ 9.
[11] The sections of the form requesting this information were left blank. *See* R. Doc. No. 12-3, at 2.
[12] R. Doc. No. 12-8, at 12.
[13] *Id.* at 3 ¶ 10. It is unclear to the Court the date on which Nogess made this alleged call to HAJP.

HAJP informed Nogess on June 27, 2018 that her Section 8 rental application had been approved.[14] Notably, the caseworker's note on Nogess's Request for Tenancy Approval form states, "NO INCOME CHANGE."[15] The HUD Family Report for Section 8 tenants, generated on July 5, 2018, similarly indicates that Nogess's reported income was still only $600 per month from Nogess's mother.[16]

Nogess contends that after she found an apartment and her landlord submitted the appropriate paperwork, she brought in her paycheck stubs to the HAJP office and signed-in with the front desk at each visit.[17] However, Nogess has not provided any information regarding the date she informed HAJP of her new job or the date when she first began providing paycheck stubs to HAJP.

The next year, in May 2019, Nogess completed her annual Section 8 recertification application and provided information on her employment with the Downtown Development District.[18] Nogess stated in the application that she had been hired in May 2018 and that her hourly wage was $11.25.[19] However, according to Nogess's own affidavit, as well as HUD's Enterprise Income Verification report ("EIV"), Nogess's employment start date was March 8, 2018.[20] In addition, Nogess's

---

[14] *Id.* at 3 ¶ 14.
[15] R. Doc. No. 12-6, at 2.
[16] R. Doc. No. 3-2, at 29.
[17] *Id.* at 3 ¶ 12.
[18] *See* R. Doc. No. 12-8.
[19] *Id.* at 5.
[20] R. Doc. No. 12-9, at 2; R. Doc. No. 3-2, at 3 ¶ 7.

official earnings statement for the pay period of April 21, 2019 to May 4, 2019 indicates that her regular hourly wage was, in fact, $13.52.[21]

After receiving this information regarding Nogess's employment and income, HAJP reduced Nogess's Section 8 rental subsidy based on HUD payment standards and sent Nogess a letter of its proposed intent to terminate her housing voucher at the end of August 2019, for failure to timely report changes in employment and income as required by law.[22] Thereafter, Nogess asked for an informal hearing to contest HAJP's decision and requested "all video and or phone recording [sic] as well as sign in sheets from March 18, 2018 to July 18, 2018."[23] HAJP later informed Nogess that the sign-in sheets were inaccessible in storage, but it provided Nogess and her counsel with a pre-hearing discovery packet that included Nogess's Section 8 application documents and the HUD Family Report.[24]

The informal hearing before a Hearing Officer took place on August 23, 2019 with Nogess represented by legal counsel. Nogess testified that she had reported her income between March and July 2018, and she presented phone records of calls she made to HAJP during that time period.[25] These phone records list the incoming and outgoing calls she made between March 6, 2018 to June 24, 2018.[26] Following the hearing, HAJP provided Nogess and her counsel with additional documents that they

---

[21] R. Doc. No. 12-10, at 2.
[22] R. Doc. No. 12, at 3.
[23] R. Doc. No. 3-2, at 11.
[24] *Id*. at 20–21.
[25] *Id*. at 20 ¶¶ 10–11.
[26] *See id*. at 12–15.

requested, including the electronic case notes from Nogess's file starting from May 2019.[27] HAJP also informed Nogess that she could provide supplemental documents for the Hearing Officer's consideration before a final decision was issued.[28]

On September 5, 2019, the HAJP Hearing Officer made a formal decision to terminate Nogess's Section 8 benefits as of October 31, 2019 because Nogess failed to properly report her income.[29] Nogess then filed suit, claiming that HAJP violated her due process rights under the Fourteenth Amendment of the U.S. Constitution and that it failed to follow proper procedures when reviewing her benefits eligibility, thereby reaching a legally erroneous decision to terminate her housing assistance.

## II.

Pursuant to Federal Rule of Civil Procedure 65(b)(1), the court may issue a temporary restraining order ("TRO") without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

---

[27] *Id.* at 20 ¶¶ 10–11.
[28] R. Doc. No. 3-2, at 33.
[29] *See id.* at 37.

Nogess has provided notice to HAJP, and HAJP has filed a response in opposition to the motion for a temporary restraining order and preliminary injunction.[30] Both parties have also filed reply memoranda.[31]

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A temporary restraining order or preliminary injunction should only be issued where: (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of injunctive relief will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). The Fifth Circuit has cautioned that injunctive relief "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see Clark*, 812 F.2d at 993 (explaining that the plaintiff "must satisfy a cumulative burden of proving each of the four elements enumerated" in order to obtain a temporary restraining order or preliminary injunction).

---

[30] *See* R. Doc. Nos. 3-3 & 12.
[31] *See* R. Doc. Nos. 17 & 22.

### i. Likelihood of Success on the Merits

Nogess advances both a procedural due process claim that HAJP violated her Fourteenth Amendment rights and a statutory claim that HAJP's decision-making procedures violated 42 U.S.C. § 1437d(k). With respect to these claims, Nogess asserts three transgressions by HAJP: 1) that it failed to provide her with the sign-in sheets from her visits to the HAJP office, 2) that the Hearing Officer failed to reference or consider the documents that she presented at the informal hearing in his statement of reasons for terminating her Section 8 benefits, and 3) that the Hearing Officer "relied on hearsay" to reach his decision.[32] Because Nogess's constitutional and statutory claims arise from the same procedural allegations Nogess raises against HAJP, the Court will address the claims concurrently when evaluating Nogess's likelihood of success on the merits.

The Due Process Clause of the Fourteenth Amendment imposes procedural constraints on governmental decisions that deprive individuals of their liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Section 8 tenants have a property interest in their federal housing benefits upon an initial showing of eligibility pursuant to the authorizing federal statute. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015).

---

[32] *See* R. Doc. No. 3-1, at 12–17.

Under the federal Housing Act, public housing agencies such as HAJP must implement specific procedures for decisions such as the termination of a tenant's Section 8 benefits. Adhering to these procedures, tenants must:

(1) be advised of the specific grounds of any proposed adverse public housing agency action;
(2) have an opportunity for a hearing before an impartial party upon timely request within [the applicable period];
(3) have an opportunity to examine any documents or records or regulations related to the proposed action;
(4) be entitled to be represented by another person of their choice at any hearing;
(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k).

The federal regulations further provide that, before the hearing, tenants must be given the opportunity to examine any public housing agency documents "that are directly relevant to the hearing." 24 C.F.R. § 982.555(e)(2)(i). If the public housing agency does not make a specific document available, it cannot rely on that document at the hearing. *Id.* In addition, the tenant and the public housing agency must be allowed to present evidence at the hearing, and such evidence may be considered without regard to its admissibility under the rules of evidence applicable to judicial proceedings. 24 C.F.R. § 982.555(e)(5). After the hearing, the individual who conducted the hearing must issue a written decision with a brief statement of reasons. 24 C.F.R. § 982.555(e)(6).

Based on the evidence presented, the Court finds that HAJP likely did not violate procedural requirements in violation of Nogess's constitutional due process or

statutory rights. Although Nogess was not provided with the sign-in sheets she requested, HAJP affirmed that it did not rely on those sheets—or the lack thereof—in connection with her hearing.[33] And while Nogess characterizes the sign-in sheets as "potentially exculpatory documents,"[34] there has been no showing that the sign-in sheets would demonstrate Nogess's required documentation of her employment income. The sign-in sheets would, presumably, only show the dates on which Nogess visited the HAJP office—not any documents that she may have presented.

Nogess's argument with respect to the Hearing Officer's failure to reference the phone records she presented at the hearing is also inapposite. HAJP's September 5, 2019 letter to Nogess informing her of its termination decision lists the evidence it considered and specifically includes "[e]xhibits presented by the participant."[35] Additionally, these phone records, like the sign-in sheets, do not provide any evidence of any income or employment records that Nogess may have presented to HAJP.

Nogess's contention that the Hearing Officer improperly relied on hearsay evidence, in violation of her rights, also fails to support her claim. As stated previously, the rules of evidence for judicial proceedings do not apply to the admissibility of evidence in Section 8 benefits hearings. *See* 24 C.F.R. § 982.555(e)(5). Furthermore, the so-called hearsay evidence to which Nogess objects, the Request for Tenancy Approval form that Nogess's caseworker completed, was not the sole

---

[33] *See* R. Doc. No. 12, at 7.

[34] R. Doc. No. 3-1, at 13.

[35] R. Doc. No. 12-15, at 4.

evidentiary basis for the Hearing Officer's decision.[36] The caseworker's note on Nogess's Request for Tenancy Approval form reporting "NO INCOME CHANGE" as of June 27, 2018 from Nogess's initial reported income of $600 per month, which HAJP highlighted in its initial termination notification letter,[37] coupled with the employment and income information HAJP gathered through other sources, supported HAJPs finding that Nogess failed to properly report her income as required by the federal regulations and HAJP policy. *See* 24 C.F.R. § 982.551(b)(2) (requiring tenant to submit "true and complete" income information as requested by the public housing agency). In the annual recertification application she completed in May 2019, it also appears that Nogess may have misreported her employment start date and hourly wage.[38]

HAJP appears to have complied with the federal regulations and procedural requirements in reaching its decision to terminate Nogess's Section 8 assistance. Upon a review of Nogess's Section 8 recertification application, HAJP notified Nogess of its proposed decision, as well as the substantive basis for such decision, and informed her of her right to an informal hearing to contest it.[39] HAJP further informed Nogess of her rights at the hearing, including the right to present

---

[36] The cases that Nogess cites in support of her hearsay argument are distinguishable from Nogess's situation because in those cases, as Nogess herself acknowledges, the termination decisions were based *solely* on hearsay evidence. *See* R. Doc. 3-1, at 15. As discussed herein, HAJP's decision was based on a review of multiple documents and sources of information, including Nogess's self-reporting—not only the "hearsay" evidence that Nogess contends is objectionable.

[37] R. Doc. No. 12-12, at 2.

[38] R. Doc. No. 12-8, at 5.

[39] R. Doc. No. 12-12, at 2.

objections,"[e]xamine the documents in [her] file, which are the basis for HAJP's action and all documents submitted to the Hearing Officer," present her own evidence and witnesses, and be represented by legal counsel.[40] HAJP provided Nogess and her counsel with Nogess's entire case file and the available documents she requested.[41] At the August 23, 2019 hearing, Nogess had the opportunity to present arguments and her own evidence, and she was told that she could submit additional documents after the hearing that she believed would be helpful to her case.[42]

The termination letter on September 5, 2019 stated the specific reasons for HAJP's decisions and the evidence it reviewed to reach that decision.[43] HAJP found that Nogess was in violation of federal regulations and agency policy requiring tenants to provide written notice to HAJP of any change in income within ten days of the change and to report all requested information truthfully and completely.[44] *See* 24 C.F.R. § 982.551(b)(2); 24 C.F.R. § 982.552(a)(1).

Based on the foregoing, the Court finds that Nogess did not meet her burden of demonstrating a likelihood of success on the merits of her claims.

---

[40] R. Doc. No. 12-14, at 2.

[41] HAJP was not able to give Nogess her sign-in sheets because they were inaccessible, but the law does not require a public housing agency to rummage through its entire storage of files to uncover materials whose relevance has not been demonstrated.

[42] *See* R. Doc. No. 3-2, at 33.

[43] *See* R. Doc. No. 12-15, at 3–5.

[44] *Id.* at 3.

## ii.    Irreparable Harm

Nogess argues that she will suffer irreparable harm through the loss of housing if HAJP is not enjoined from terminating her Section 8 benefits. Nogess also alleges immediate injuries in the form of "economic loss, homelessness, mental anguish, and possible loss of employment."[45] Fearing eviction, Nogess vacated her apartment before the end of August, and she has been staying temporarily with friends and family.[46] Nogess also alleges irreparable harm in the form of automatic termination from the Section 8 program if she does not receive any assistance by January 28, 2020, which would allegedly render her lawsuit "moot."[47]

Pursuant to 24 C.F.R. § 982.55, a Housing Assistance Payment ("HAP") contract between the public housing agency and the owner of a unit rented by a Section 8 tenant "terminates automatically 180 calendar days after the last housing assistance payment to the owner."[48] Based on the date that HAJP made its last rental assistance payment on behalf of Nogess, HAJP's contract with the apartment owner will terminate on January 28, 2020.[49]

The Court agrees that the loss of subsidized housing may constitute irreparable harm warranting injunctive relief under certain circumstances, but Nogess has not demonstrated such circumstances in her case. Nogess's current

---

[45] R. Doc. No. 3-1, at 18.
[46] R. Doc. No. 3-2, at 4 ¶ 24.
[47] R. Doc. No. 14, at 4; R. Doc. No. 24.
[48] Nogess mischaracterizes this regulation in her reply memorandum—the 180-day period for automatic termination applies to the date of the last payment to the owner, not the tenant, of the unit. *See* R. Doc. No. 14, at 4; 24 C.F.R. § 982.55.
[49] *See* R. Doc. No. 24-1, at 1.

Section 8 housing assistance payment, based on Nogess's May 10, 2019 earnings statement, is $38.00 per month.[50] Accordingly, the share of rent due from Nogess for her most recent apartment was $732.00 per month.[51]

Although Nogess argues that she may qualify for a higher subsidy in the future because the fair market rent for Jefferson Parish has increased from the previous year and her income has decreased "because she has been offered less overtime,"[52] Nogess has not demonstrated that she has been or would be unable to secure decent housing in the absence of the Section 8 housing subsidy. Furthermore, despite her contention that she is unable to afford market rent for a one-bedroom apartment in Jefferson Parish and would thereby face homelessness without Section 8 assistance, Nogess has not addressed alternative housing options, such as a studio apartment or living with a roommate.

The Court is sympathetic to Nogess's situation, but it finds that she has not satisfied this requirement for injunctive relief.

### iii.    Balance of Harm to the Parties

The Court finds that the balance of harm is a neutral factor. If injunctive relief were granted, HAJP would simply be required to continue with the status quo—that is, providing Nogess with a housing assistance subsidy based on her income and cost

---

[50] R. Doc. No. 12, at 3.
[51] *Id.* at 9.
[52] R. Doc. No. 14, at 5. The Court notes that this contention was not alleged in Nogess's affidavit, but rather in the reply in support of the motion for injunctive relief, and that it lacks evidentiary support. The Court also notes that Nogess has not stated that she reported this change in income to HAJP.

of rent—while absent injunctive relief, Nogess faces the prospective loss of her Section 8 benefits. However, as previously stated, Nogess has not yet convinced the Court that affordable housing is unattainable in her situation.

### iv.    Public Interest in Granting Injunctive Relief

The public has an interest in ensuring that individuals in need are not unlawfully terminated from public assistance benefits. In a parallel vein, the public has an interest in ensuring that benefits recipients conscientiously comply with the policies that govern public assistance programs. The Court acknowledges the financial burden that Nogess may experience without the Section 8 housing subsidy, but the record appears to demonstrate that she did not properly report her income as required by HAJP policy and federal law. Moreover, Nogess has not demonstrated that HAJP's termination decision likely violated her due process rights or statutory requirements. Government assistance funds are limited, and, according to HAJP, Nogess's misreporting of her income has resulted in a rental assistance overpayment of $7,917.[53] The Court finds that the public interest factor does not support the granting of injunctive relief.

### III.

Because Nogess has not met her burden with respect to all four requirements for injunctive relief,

**IT IS ORDERED** that the motion for a temporary restraining order is **DENIED**.

---

[53] *See* R. Doc. No. 12-15, at 4.

**IT IS FURTHER ORDERED** that Nogess's request for a waiver of the bond requirement under Federal Rule of Civil Procedure 65(c) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that a hearing on a preliminary injunction shall be scheduled at a later date.

New Orleans, Louisiana, October 31, 2019.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**